A. C. HUCKABY v. THE STATE.

No. 6874. Decided April 26, 1922.

**Theft From the Person—Insufficiency of the Evidence—Accomplice—Corroboration.**

Where, upon appeal from trial of theft from the person, this court is unable to escape the conclusion that the conviction rests wholly upon the uncorroborated testimony of the accomplice, a thing which is not permissible under our law, the judgment of the trial court must be reversed and the cause remanded.

Appeal from the District Court of Potter. Tried below before the Honorable Henry S. Bishop.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Veale & Lumpkin,* for appellant.—Cited Sharp v. State, 6 Texas Crim. App., 650; Serratto v. State, 171 S. W. Rep., 1133; Johnson v. State 208 id., 107; Boone v. State, 235 id., 580; Carlisle v. State, 142 id., 1178.

*R. G. Storey,* Assistant Attorney General, for the State.—Cited Watson v. State, 237 S. W. Rep., 298; Cage v. State, 236 id., 464.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Potter County of the offense of theft from the person, and his punishment fixed at two years in the penitentiary.

This case must be reversed for the insufficiency of the evidence corroborating the testimony of A. A. Davis, an accomplice witness. The facts appear to be almost without dispute, no witnesses having been introduced by appellant. Addie Berry, a prostitute in the town of Amarillo, Texas, met four young men on the night of July 20th on a public street and got into a car with them for the purpose of going to some point out on the prairie near said city and there having carnal intercourse with said parties. The car broke down and was abandoned and the parties proceeded on foot. Arriving at some convenient place said men, one after another, had intercourse with the woman. Davis was the last of the four to go through such performance. After finishing and getting up from the ground he grabbed the woman's pocketbook and ran away with it. She swore there was $37 in the pocketbook and that he snatched it from off her arm. She said appellant, his brother and young Smith were standing about one hundred feet away while she and Davis were down on the ground, and that when Davis ran away with her pocketbook she went to

where the other three were and told them what he had done and they expressed surprise and offered to assist her in the recovery of her money, and that the two Huckaby boys took out after Davis, and that Smith escorted her back to town. She later reported the loss of her money to the officers and evidently gave them a history of the affair, and the officers in searching for said parties found the two Huckabys and Smith asleep in a truck near where the broken down car had been left. Later still another party located Davis asleep in the cab of a different truck evidently somewhere near the place where the other truck was. A search of the four resulted in the find-, ing of some money which was put by an officer into separate packages which were produced and identified by him upon the trial and the contents described. He said one package was taken of appellant and contained a five-dollar bill; another package was taken from Tom Huckaby and contained a two-dollar bill, a one-dollar bill and a five-dollar bill; another package was taken from Davis and contained a ten-dollar bill, a one-dollar bill and some silver; another package contained a pocketbook which was taken from Smith and had in it a five-dollar bill and some books, chewing gum and pennies. The pocketbook just mentioned was not the pocket ook of the woman, the latter having been thrown by Davis as he fled and after he abstracted its contents. No attempt was made to identify the money found on any of said parties as being the money taken from the woman. She described her money as being five five-dollar bills, one ten-dollar and a two dollar bill. The woman further testified that the officer who searched Davis after his arrest had what she called the "staves of the pocketbook" in his hand and that he said he got it out of Davis' pocket. A number of officers and other witnesses who assisted in the search for the parties and were present when they were arrested and searched, were witnesses but none of them testified to any facts further corroborating the accomplice witness Davis, than what is substantially stated above.

A. A. Davis, the man who snatched the pocketbook from the woman, was introduced as a witness on behalf of the State. He testified admitting that he got the pocketbook but swore that at the time he got it it was lying on the ground by the side of Addie Berry and was not on her arm. A careful examination of the testimony of this witness discloses that he said with reference to himself and the other three men: "We had a little conversation about Addie Berry, about what we were going to do to her and the conversation was that we were going out there and screw her and then take what she had, what money she had. I did not say this nor do I remember who said it. It was me that said it or one of the three boys, and at that time all four of us were there together when the statement was made." On cross-examination Davis said that the above conversation was had

between him and the other parties after dark, and was made about two hours before they took Addie Berry out on the prairie, and that they had not seen her at that time. Further pressed in cross-examinattion as to what kind of an agreement he had with the other boys and when they had it, he said: "Yes sir, I made this agreement to go out and —— this woman and then to rob her, two hours before I met her or saw her and I never saw her in my life until I picked her up out on the street and carried her out there on the prairie." Davis further testified that after he snatched the pocketbook from the woman and took the money out of it, that he gave all of the stolen money to appellant. He further testified that after getting money he came up town into the business part and stayed about forty minutes and went back to where the car was, and he then said that there was not a soul down there where the car was when he went back, and that he lay down and went to sleep in the front seat of a truck. In another place he said that the Huckaby boys and Smith were with him when he went back down to where the car was. Many other-contradictory statements appear in the testimony of Davis. We have carefully gone over this record time and again and find nothing in same corroborative of the witness Davis other than we have stated. The offense charged against appellant and of which he was convicted was theft from the person. Without the testimony of witness Davis, the accomplice, we have only the facts appearing in the record that four young men went out with prosecutrix for the purpose of carnally knowing her. Each paid her an agreed price for her favors. One of them, the last one to be with her, took her purse and fled with it. The others were doing nothing in aid of such taking. They expressed surprise and regret and offered to try to help her get her money back. Neither she nor any other witness saw either of said other three young men with Davis at any time after he ran away with her purse. When arrested Davis was in one place and the other three young men in another. They stated at the time that they did not know Davis was in the truck where he was found sleep. No money or other property of prosecuting witness was found on the person or in the possession of either of said three. No statement in the nature of a confession or other criminating evidence appears to have been made by either of them after they were charged with taking the property, or were arrested. Aside from the naked fact of the four being together at the time they went out on the prairie with the woman, there appears nothing in the record reflecting the guilt of the other three unless it arise from the fact that after Davis ran away with the woman's purse, the others tried to get her not to report the matter to the officers. Some of them said they were married, and that if it was reported they would be drawn into the matter and would have trouble with their wives. This would appear to be a very natural result and would

not seem capable of any strong inference of any other reason for the request made by them of her, than that assigned. Being unable to escape the conclusion that the conviction rests wholly upon the un-corroborated testimony of the accomplice, a thing which is not permissible under our law, the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*